Smith v. Warden Baylor Womens Correctional Institution Good morning, your honors. May it please the court, Thomas A. Dreyer on behalf of the appellant in this matter, Hero Smith. I'd like to reserve three minutes for rebuttal. Thank you, sir. One quick dispatchal question at the outset. The client waited, what, five years to file the PCRA? A little bit more than four. Do you know why it took so long, roughly? I do not. I was not her attorney at the time. Your honors, we're here today seeking Ms. Smith to be able to go to a sentencing, a direct, I'm sorry, a direct appeal following her sentencing. That right, that critical stage of the criminal proceedings was taken away from her when her attorney, a public defender in Sussex filed a pro se notice of appeal, which she had filed on her own. Makes no sense. We're pretty familiar with the facts. Okay. So what we're suggesting, your honors, is that this advice violated Strickland in that it was both deficient and prejudicial. It was deficient in that, according to Delaware Superior Court Rule 35B, the public defender could have pursued both a motion for reduction of sentences with the trial court at the same time that he appealed, that he pursued a direct appeal to the Delaware Supreme Court. Yeah. We got you on that too. That's in your papers. Can you talk for a minute about the Roe versus Flores Ortega case and help us understand how that plays in here? Judge Jordan, that applies as follows. Basically, it says that the filing of a notice of appeal is a merely administrative act. It's not part of any strategy or part of tactics. When a defendant who has been sentenced asks, requests his attorney to file that appeal, then the attorney must file the appeal. And if the- Or even if the attorney expresses an interest, or I'm sorry, the client expresses an interest in appealing. And that's correct. And that's what happened here. Ms. Smith filed a pro se notice of appeal, which was then transferred to, or transmitted to the public defender by the Delaware Supreme Court. And at that point, the public defender should have realized that his client had an interest in filing the appeal. Any idea why this wasn't particularly on point? Why it wasn't made clear to any of the judges that ruled on this, including the district judge? I do not know. She was acting as a pro se attorney up until the court appointed me to represent her after the granting of the certificate of appealability. It's not mentioned, apparently, it's not mentioned in the state courts. It's not mentioned here in the district court either. I was in the granting of the, or a little bit prior to the granting of the certificate of appealability. When the court ordered the government, the appellees to file a reply to the application for a COA. So it doesn't, Flora Sertei doesn't displace Strickland. How does it work? I think it goes to the second prong of Strickland, which is that the appellant must show prejudice in most cases that his or her lawyer's deficient performance resulted in prejudice. Prejudice being that, but for the acts, the deficient acts of counsel, the result would have been different. Well, Flores Ortega is an exception to that general basically by saying that in this situation where the notice of where the appeal was not permitted, where the appeal was withdrawn in this case, prejudice is presumed. In other words, the paperwork now does not have to convince the court that the client, that the defendant, the appellant had meritorious claims that would have been submitted at that sentencing, which did not occur. We do not have to show any valid reasons, meritorious reasons at this point. I understand then that your argument in essence is the deficient performance is clear because she wanted to appeal. He, the lawyer, talked her out of it, talked her into withdrawing a timely appeal in order to pursue what looked like a fool's errand to go back to the same judge who'd censored a life imprisonment plus and asked for a reduction when he could have pursued both simultaneously. That's deficient performance. And Flores Ortega says prejudice is presumed, ergo Strickland violation. That's your pitch, right? Correct. Then going back to what Judge Ambrose said at the start, since we've got to look at equitable tolling here, right? There's no question she's outside statutory time limits. Your Honor, my argument is based on statutory tolling. Oh, it is? Yes. All right. I was under the impression that we were dealing with equitable tolling here, that that was your best move. But go ahead. Well, because Judge Bradley, the trial court, ruled that based on Delaware law, the filing of the PCRA motion pro se, which occurred on and look at my notes here, April 1st, 2014, was a timely filing because of an exception to Rule 61 in Delaware. And basically the exception was, according to Judge Bradley, miscarriage of justice, a culpable claim of a miscarriage of justice. So the judge in effect ruled that even though it was filed years later, it was, in fact, a timely filing. Yeah. So you're. Yes. And I probably said it inappropriately when I said there's no question, I guess I should have said there's no question in my mind, because what you're really saying is your papers do talk about, do make a statutory tolling argument, but they require a resurrection, right? There's no question that she filed her application well after the one year period expired. And your argument depends entirely on the notion that because for state purposes, they said this is going to be considered an okay filing, that that resurrected or that affected a federal statute of limitations. Correct. Right. So if we thought that didn't have much traction, equitable tolling is still available to you, right? I did not argue it. The appellees raised it in their reply brief. On the table. Okay. Put it on the table. I did not pursue it because I didn't think it had any merit. Okay. Do you wish to pursue it now? I don't think it has any merit. And that's because why? I can't remember exactly even what the two prongs were. I may have a minute. Well, the two prongs are there has to be reasonable diligence and there has to be extraordinary circumstance. So the extraordinary circumstance, you know, I guess you could argue the inadequacy of the lawyer, but I guess you're saying, yeah, I can't say she was reasonably diligent. Not waiting that long. Yeah. I'm not trying to mislead the court, but yes, it would be based on the judge, judge Bradley, the trial court's decision that although four years had transpired that her filing her pro se PCRA motion was filed under an exception to the rule in the state of Delaware. Yes. So, so what's your, what's your legal authority for the argument that when a time limit passes, a federal timeline that passes a state court decision on state law alters the federal statute of limitations. In other words, how does the decision of judge Bradley that there was a miscarriage of justice exception interact or tie in with the section 2254 timeliness requirements? I guess my answer would be that the fact that the Delaware judge handled the case on the merits, the fact that judge magistrate judge Norica handled the case on the merits suggests that they as well thought that the filing was timely and that you say they thought it was timely. Timely timely is a word that's really, it's, it's clearly not timely in the, in the ordinary sense of that word. It was out of time. The question is, should it be treated non-pro-tunk is okay because of a miscarriage of justice? Yes, because it's an exception to the untimely. Okay. Is there a nature of the, of the calendar? Yeah. Is there anything in the EDPA statute that indicates that a state court's decision to allow a non-pro-tunk filing alters the statute of limitations? Not that I'm aware of your honor. Okay. Is there anything else? Judge Roth, anything? No. Okay. Thank you. And Mr. Dreier, lest I forget to do this when you're up here on rebuttal. Thank you for taking this case on behalf of Ms. Smith. You're welcome. We'll hear for counsel. Good morning. May it please the court. Catherine Garrison from the Delaware Department of Justice on behalf of the respondents. The respondents have conceded in this case that the Delaware Superior Court, which issued the last reason decision did not properly consider Roe versus Flores Ortega and denying Smith's claim that defense counsel was ineffective for failing to file an appeal of her plea. Because the court did not consider Flores Ortega, it asked and answered the wrong question when deciding that defense counsel's decision not to file an appeal was appropriate. Therefore, the Delaware court analyzed Smith's claim in a manner that contradicted clearly established Supreme Court precedent. And this court's review of the issue would be de novo. Sorry. The last part was it's de novo review. So on de novo review, should we look at this and say, look, this was just wrongly handled and send it back? Well, the court would not owe deference to the state court's legal conclusions, but it would still presume that the court's factual findings, including its credibility findings are correct. So the court can look at those findings and make its own determination as to whether defense counsel's advice to the defendants was objectively unreasonable or not. I mean, the only, I think defense counsel, the only argument he really had was not, she made this decision on her own. I really didn't coerce her and which, but on its face, I can't figure out why you wouldn't leave the appeal in place, even if you decided to pursue a reduction of sentence motion, uh, looking at this from outside the box, if you will, a reduction of sentence motion before this particular state judge seemed to be like chances of like slim and none and slim had left the building. Well, there, I mean, there could have been some possibility of, because the judge has the ability to, um, under rule 35 motion that's filed, he had two chances to look at it. He had, he had, he, he sentenced the first time offender, uh, at age 19 to life imprisonment. He did. And he was the guy who was going to be talking about a reduction in sentence. And you could have maintained the appeal at the same time if you'd just chosen to do that, Mr. Defense counsel. So I guess I got to press you a little bit. Uh, I'm in the same boat as judge Ambrose for the life of me. I I'm, I'm struggling to think, is there any rational legal reason not to maintain the appeal that she clearly wants to file because she's filed it on her own rather than, than saying, nah, you don't want to appeal this judge Bradley. He's a soft hearted guy. Go back to him. What, what possible thoughtful, accurate bit of legal reasoning could underlie that? To be fair. Um, he had nothing to lose. She had nothing to lose by filing an appeal. He could have filed a brief under rule 2016, which he alleged that there was no merit to, uh, any of the claims. And then she could have raised her appeal. I mean, the only thing I can say is that, um, in his assessment, when he was advising her, he realized that there were two paths and, um, you know, he realized that going the direct appeal route was not going to result in any favorable decision. And he advised her to, um, based on that to instead pursue a motion to reduce her sentence. And it should also be noted that a lot of the claims that can be raised on a direct appeal regarding a sentence can also be raised in a rule 35 motion. So any, any idea why the Flores Ortega decision was not mentioned to any sort here and say that I've been involved in the case during the post-conviction proceedings and neither I nor, um, defense counsel on the other side at the time raised this case. Um, it's just a matter of, you know, as I've moved more into, to practicing in the habeas area, it's been a learning experience and there's a lot of complicated law out there. I appreciate your honesty. We've in mind, and it is, um, it's a gracious way to acknowledge a learning curve. Um, certainly a pretty strong argument can be made of the, to, about deficient performance under Flores Ortega, prejudice is presumed, right? That's correct. So on the merits, you got what looks like a pretty good Strickland claim, right? It's, it's a question of whether it gets heard. Right. Well, the, the question is if she had nothing to lose by filing a direct appeal is defense counsel advice to withdraw that field object. That is the question. And, and, nobody yet has, has articulated a sensible reason not to maintain the appeal. I just haven't, haven't heard one. Uh, so if we say for the sake of argument, it looks like she's got a pretty darn good Strickland argument. What this case comes down to is did she just blow the statute of limitations so badly that it can't be resurrected as Mr. Dreier suggests? Uh, and it can't survive equitable tolling. Why don't you go ahead and meet those tolling arguments? Cause that's where the fight really seems to be. I think, uh, the response to the argument that the, um, we'll accept your, your petition and we'll sit the piece, the, uh, post conviction court did judge Bradley did on post conviction and which judge Norica did out of, as she put it an abundance of caution. Um, why shouldn't that prompt us to say, look, if the, if the state court is prepared to treat this as, as timely, we should treat it as time. I'm not aware of any case that has found that to be an, a reason to, um, to assert equitable holding now to the statutory tolling argument. At this point, by the time she filed her petition, the statute of limitations had already run. It had been four years since it had run. And, um, the fact that she may have arguably filed a properly filed a timely state court post conviction motion doesn't restart the statute of limitations period. I'm just not aware of any case that has ever found that we'd have. I mean, uh, um, there is a law out there. We've said it in NPOs, other courts have said it in presidential opinions that, uh, an egregious error by counsel can constitute an extraordinary circumstance, right? Sure. We thought that, that defense counsel's actions here were just egregious. They were so far off. Well, then you'd have to look. Why, why couldn't that be a basis for saying, you know, yeah, four years is a long time. You could question her diligence and maybe that's a factual thing that ought to be looked at by the district court. But at least as to extraordinary circumstance, this was a, this was a, an error by defense counsel of, of truly monumental proportions because it was, it was so far off. It deprived her of any chance of a different person than judge the superior court judge looking at that exceptional sentence that she got. I, um, I think then you would look at the, the test for equitable polling and the two criteria. And, um, she did not establish that some extraordinary circumstance stood in her way. That's the question I'm putting to you, Ms. Garrison. Why, why is it egregious attorney error here enough of a extraordinary circumstance to at least get us past that prong and get us asking about reasonable diligence, which would require some fact finding. You'd maybe send it back to judge Norica to do some fact finding about whether she was reasonably diligent or not. Well, in this case, um, four years past, I don't know that long time, but she's, you know, she was 19 when all this was happening. Now she's in her early mid twenties. She's sitting in a JSL at some point, you know, she learns, she comes to understand better. I had the worst advice ever. I didn't, I listened to my lawyer. It was just terrible advice and I'm going to spend the rest of my life in this prison. Uh, and there's case law out there that says egregious attorney error can be exceptional circumstances. I can make my pitch now. Why shouldn't we hear that? I don't believe that the type of egregious attorney error that would justify equitable polling is the type of error that occurred here. My understanding is that typically when, when they're talking about egregious attorney error, they're talking about some error that prevented the timely filing. This, this, this withdrew a timely filing. I mean, that's the, doesn't that actually make it even worse? It's not like they, he stopped her from filing. She filed and then he got her to take it out to withdraw the filing. Why isn't that like a step up in terms of egregiousness? Well, I was referring to the timely filing of the habeas. Oh, okay. I'm with you. Um, but I'd also note that, um, this court has stated that the tolling exception is not an open-ended invitation to the courts to disregard limitations period simply because they bar what may be an otherwise meritorious cause. I'm looking at 2254 D2 and it is the one, one year's limitation for filing a 2254 petition is told during those times in which a properly filed application for state court post-conviction relief is pending. And two says the time during which a properly filed application for state post conviction or other collateral relief with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection. And it looked like the picker petition was pending until what January 2nd, 2018 Delaware Supreme court affirmed. That's correct. Uh, and then she filed her habeas petition, what, 20 days later, correct. So why wasn't she within the one year limit? Well, because by the time she filed her post conviction motion, the statute of limitations under ETA had already lapsed and another four No, because I mean, by the time she filed it, the statutory limitations period has already passed. You can't then resurrect the limitations period and started a new, just because she filed a, um, a post conviction petition. One year clock doesn't begin. Doesn't begin until a properly filed application for state post conviction relief for other collateral relief with respect to the pertinent judgment or claim is pending. I'm not thinking there might, there might be a good argument for statutory tolling as Mr. Dreier has, has argued. My reading of the law has always been that the one year period begins, um, other, there's the four different situations. Um, one of them being, you know, the, you don't become aware of the facts until a later date, but the, the main one that is relevant here is on the date. That is, but judge Bradley had held it. The miscarriage of justice exception said that she was timely under state law. So you would have, if you're this person appearing pro se, or even having counsel, you're thinking, okay, I'm under state law and that clearly tolls the point is it could be 10 years. I mean, the question is under state law, are you, do you have a valid PCRA petition? And the court said it's valid. They're just not going to grant it because the timeliness issue was deemed to fit within an exception. Sure. But that's a matter of state law and it doesn't affect the, you know, other than what's in 2254, it doesn't affect, um, the stats, the running of the statute of limitations. Just, I mean, I've not seen any case that says just because a, um, state court determines that they're going to consider a late filed post-conviction motion that that would resurrect the statute of limitations. Well, I'm looking at a third circuit case from 2001 called Fahey v. Horn, which says when determining whether a petition for collateral relief was properly filed, we have plenary review over statute of limitations issues. But because EPA requires us to rule as what a court sitting in diversity, we would look to state law and defer to the highest court of a state when it ruled on the issue. Sure. That is when the court has considered those cases. It's when a, the distinction is between, um, they're, they're filed or not properly filed. Um, and it's when a post-conviction motion is filed within the time period of the EDPA statute of limitations, um, it still hasn't run. And in that case, whether or not it's properly filed or not properly filed is relevant to determining whether that statute of limitations has already run properly filed. PCRA petition is not going to resurrect the EDPA statute of limitations. That's my understanding of the law. The Delaware Supreme court basically affirmed judge Bradley for the reasons given by the court, both as to Tonga and us and on the merits, is that correct? That's correct. So if the state says you have a meritorious ineffective assistance of counsel claim, but they just don't grant it. And that could, if it, if it's plausible, the constitutional violation, why, and that's which was a 2016 decision. No, I mean, it seems like there's a plausible argument at least for statutory tolling. Well, I'm, I'm not aware of any case. I mean, that would, if it's filed outside of the, the statute of limitations that that would, that that would, um, pull it because it's already done. It's already elapsed. I'll leave you with that. There was a, there's a well-known academic, the name of Erwin Chemerinsky that says, trying to understand habeas is like trying to understand the seven layers of hell. I agree with that. All right. Well, thanks very much. We appreciate your argument. Ms. Garrison, we'll hear from Mr. Dreier on rebuttal. Thank you. Thank you. Judge Ambrose, I would ask that the court, um, follow what you have suggested here. Um, I think the statutory tolling is the appropriate vehicle to get over the timeliness hump. Um, the state court ruled that the state proceeding was both properly filed, what was properly filed. And then obviously it was pending. The, uh, Supreme court Delaware Supreme court decision was January 2nd, 2018. Ms. Smith filed her pro se habeas on 20 days later on January 22nd. So there's no question. There's no question that she filed within the time that that post conviction relief motion was decided. That doesn't speak to the point. Ms. Garrison has made, which is there's nothing in that, uh, that, that indicates that once the time has lapsed a later filed PCRA petition can bring it back into existence, which is, I think what I was asking before, do you have any case law that indicates because as judge Ambrose just said, couldn't, you know, instead of four, it could have been 10 years could have been 20 years by year by into this, every other person knowledgeable about the case be dead. And that somebody on the superior court of Delaware could say, you know what we should hear this non-pro tongue. And then she would be timely filing, even though 40 years have passed, the logic of your position would allow that, right? Correct. Put more simply, if judge Bradley was wrong on the miscarriage of justice exception, does that help her or actually hinder her in terms of statutory tolling? I think it would hurt her. I would rely on his determination that she did act within an exception to the one-year rule under the state of Delaware. Why was he correct in acting on that exception? Based on the Delaware state law that he had reviewed under rule 61. I interrupted myself, but I take it. You have no case from any jurisdiction, any circuit that says once the statute has lapsed, it can be, it can be in effect resurrected by a state court decision, allowing a non-pro tongue filing. I do not. Okay. Right. Again, we thank you for your service, Mr. Cryer. We appreciate your honor today. Good morning.